**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AILEEN GONZALEZ,

       Plaintiff,

v.                                             Case No. 8:21-cv-1675-WFJ-TGW

FRONTIER AIRLINES, INC.,

       Defendant.
_____/

**DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendant Frontier Airlines, Inc., pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves to dismiss the Complaint and Demand for Jury Trial (Dkt. 2) (the "Complaint") filed by Plaintiff Aileen Gonzalez on the grounds that: (i) Plaintiff's claims are preempted by the Airline Deregulation Act of 1978, codified at 49 U.S.C. § 41713(b); (ii) Plaintiff's claims are preempted by the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq.* and Plaintiff has failed to state a claim thereunder; and (iii) to the extent not preempted, the allegations in the Complaint fail to state a claim upon which relief can be granted, including for punitive damages and attorneys' fees.

**INTRODUCTION**

This action stems from an altercation between two passengers—Plaintiff and another passenger—onboard Frontier Flight F9 2098 from Las Vegas, Nevada to Tampa, Florida on October 12, 2019. The Complaint does not assert a claim against

the tortfeasing passenger ("Passenger B"). Instead, the Complaint appears to assert three causes of action against Frontier: (1) negligence; (2) gross negligence; and (3) a violation of 49 U.S.C. § 41702. The basis for these ambiguous and undeveloped claims centers on Frontier's (i) decision to allow Passenger B to board its flight and (ii) Frontier's alleged failure to closely monitor Passenger B, though Plaintiff admittedly was sleeping throughout the flight. (*See* Dkt. 2 ¶ 7.)

Plaintiff's claims against Frontier are expressly preempted by the Airline Deregulation Act of 1978, codified at 49 U.S.C. § 41713(b) (the "ADA"), which preempts all aspects of an airline's rates, routes, and services. The claims asserted challenge the manner in which Frontier boards its passengers and monitors them during flight; and they fall squarely within Frontier's "services." Additionally, Plaintiff's claims are preempted by the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. § 40101 *et seq.*, and its implementing regulations because the claims asserted by Plaintiff are subject to pervasive federal regulation; Plaintiff has failed to allege a violation of the governing regulations or the general federal standard of care. Lastly, the Complaint falls short of the *Iqbal/Twombly* pleading standard for articulating any cause of action against Frontier let alone one for negligence, gross negligence, and violation of 49 U.S.C. § 41702. There is also no basis for punitive damages or attorneys' fees here.

## **FACTUAL ALLEGATIONS**

The Complaint alleges that on October 12, 2019, Plaintiff boarded her return flight, which departed late allegedly due to a delayed boarding by Passenger B

2

caused by "his mental instability caused by unknown natural reasons, drugs, or alcohol, and wildly seeing things which did not exist." (*See* Dkt. 2 ¶ 5.) The Complaint further alleges that Frontier negligently permitted Passenger B to board even though "other passengers noted he was shaking and sweating and looking very strange and unstable." (*Id.* ¶ 6.) Frontier allegedly failed to closely monitor Passenger B during the flight, "did not secure his seating with someone to closely watch him," and let him sit with passengers. (*Id.*) Although Plaintiff fell asleep soon after departure, she claims that Passenger B continued to act bizarre and unstable. (*Id.* ¶ 7.) As the flight was descending, Passenger B "believing she had set his hair on fire," allegedly punched Plaintiff. (*Id.* ¶ 8.) Passenger B then was escorted to the back of the plane "by the onboard federal Marshall or flight crew" (*id.* ¶ 9.), was arrested upon landing, and was prosecuted. (*Id.* ¶ 10.)

Plaintiff claims to have suffered physical and emotional pain as well as humiliation and embarrassment. (*Id.* ¶ 12.) Plaintiff is seeking compensatory and punitive damages, costs, past and future medical expenses, and attorneys' fees.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) considers the facts as alleged in the complaint to be true, but challenges a plaintiff's right to recovery under the stated facts. While Fed. R. Civ. P. 8(a)(2) requires a pleading to contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 578 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 679 (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Dyal v. Pinkston*, No. 3:17-CV-933-J-34JBT, 2018 WL 5221239, at *1 (M.D. Fla. Oct. 22, 2018) (applying *Iqbal* and holding that specific facts must on their face plausibly establish a claim).

## ARGUMENT

### I. Plaintiff's Claims Are Expressly Preempted By The ADA.

To ensure that States would not interfere with federal deregulation of the airline industry, an express preemption provision was included in the statute to prevent States from enacting or enforcing laws that would improperly regulate airline business practices. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378-79 (1992). The language of the ADA's preemption clause provides that:

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law **related to a price, route, or service of an air carrier** that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added).

A tetralogy of U.S. Supreme Court cases instruct courts to broadly interpret the ADA's preemption clause. In *Morales*, the Supreme Court held that the phrase "related to" should be construed expansively so that state law claims that have a "connection with or reference to" an airline's prices, routes, or services are preempted. 504 U.S. at 383-86. In *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 226 (1995), the Supreme Court affirmed the broad construction espoused in *Morales* by finding that claims relating to an airline's "unessential" services are covered by ADA preemption to the same extent as "essential" services. And in *Rowe v. N.H. Motor Transport Ass'n,* the Supreme Court again applied *Morales*[1] in finding that preemption is not confined to state laws expressly aimed at economic regulation, but rather extends to other state interests as well. 552 U.S. 364, 373-376 (2008).

Most recently, the Supreme Court reaffirmed its holding in *Morales* and *Wolens* in the context of common law claims, recognizing that "[w]hat is important . . . is the effect of a state law, regulation, or provision, not its form, and the ADA's deregulatory aim can be undermined just as surely by a state common law rule as it can by a state statute or regulation." *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1430 (2014). As the Supreme Court precedent aptly demonstrates, the ADA's express preemption clause should be construed and applied broadly.

---

[1] *Rowe* interpreted a virtually identical preemption provision applicable to motor carriers that is found in the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). The FAAAA forbids states from "enact[ing] or enforc[ing] a law . . . related to a price, route, or service of any motor carrier." 49 U.S.C. § 1450(c)(1).

5

The Eleventh Circuit has followed the Supreme Court's broad interpretation of "services" and found state law claims, such as negligence, preempted. *See, e.g., Mennella v. Am. Airlines, Inc.*, 824 F. App'x 696, 703–04 (11th Cir. 2020); *see also Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1268 (11th Cir. 2018) ("This language [in the ADA] expresses a broad preemptive intent . . . ."); *Worldwide Aircraft Servs., Inc. v. United Healthcare Ins. Co.*, No. 818CV2549T24TGW, 2018 WL 6589838, at *2 (M.D. Fla. Dec. 14, 2018) ("State common law claims are included within the preemption provision.") (citing *Northwest, Inc.*, 572 U.S. at 281). "Service" is construed to include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1256–57 (11th Cir. 2003).

Here, the genesis of Plaintiff's action is Frontier's boarding procedures. (*See* Dkt. 2 ¶ 6.) Boarding procedures, which would include any decision to allow a passenger to board, are undoubtedly recognized as a "service" under the ADA preemption provision within the Eleventh Circuit. *See Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1343 (11th Cir. 2005) (citing *Branche*, 342 F.3d at 1257); *see also Von Anhalt v. Delta Air Lines, Inc.*, 735 F. Supp. 1030, 1031 (S.D. Fla. 1990) (holding that the decision not to permit plaintiff to re-board was preempted by the ADA which "unmistakably manifests the intent of Congress to preempt such

state common law tort claims as related to the services of aircrafts and the safety of passengers").[2]

To the extent that any of the claims are based on Frontier's decision to allow the tortfeasing passenger to sit among other passengers or Frontier's response to the onboard incident, they also unquestionably fall within the definition of a "service." *Mennella*, 824 F. App'x at 704 (affirming dismissal of negligence claims as preempted by the ADA where the claims were based upon how the flight attendants and pilots responded to an emergency situation while in the air because an airline's handling of crises during travel is "related to" the "services of the air carrier"); *see also Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 366 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009) (finding that making seating assignments was a basic airline service and therefore claims relating to such were preempted by the ADA).

A near identical case found similar claims preempted by the ADA: *Whitney v. JetBlue Airways Corporation*, No. 1:07-cv-01397-CBA-CLP, ECF No. 70 (E.D.N.Y. Aug. 20, 2009), *report and recommendation adopted*, No. 1:07-cv-01397-CBA-CLP, ECF No. 76 (E.D.N.Y. Sep. 29, 2009) (a copy of which is attached

---

[2] *See also Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (holding that plaintiff's tort claims premised on Comair's refusal to permit him to the board his flight were preempted under the ADA); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1434 (7th Cir. 1996) (holding that tort claims based on the airline's refusal to transport passengers clearly related to the airline's provision of services under the ADA); *Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214, 223 (S.D.N.Y. 1994) ("[D]ecision whether to [transport a passenger] is unquestionably a service, because such a decision determines whether the passengers will get to their destination.")

7

as Exhibit A).  In *Whitney*, the plaintiff asserted negligence claims against an airline for the conduct of a third-party passenger ("Passenger K") who reportedly kicked the back of her seat for more than five minutes which resulted in physical injuries to the plaintiff.  *Id.* at 3.  There, as here, the plaintiff did not complain to the flight crew about the subject passenger at any point preceding the incident.  *Id.*  The court found that regulating passenger conduct (*id.* at 16) and the response of the flight attendant to Passenger K's behavior directly affect the airline's provision of an airline service to its passengers —namely, ensuring their safety and comfort during the flight (*id.* at 14) and the claims were therefore preempted.  *Id.* at 16; *see also Stone v. Continental Airlines, Inc.,* 905 F. Supp. 823, 825-26 (D. Haw. 1995) (holding claims were preempted where the airline allegedly "failed to take precautions to control a disorderly, intoxicated and potentially violent passenger").

For these reasons, Plaintiff's claims against Frontier—based on its boarding procedures and response to the incident—unquestionably fall within the definition of "services" and are preempted by the ADA.

### II. Plaintiff's Claims Are Impliedly Preempted By The FAA.

Even if not preempted by the ADA, Plaintiff's claims are preempted and governed by the FAA.

#### A. The FAA Impliedly Preempts The Entire Field Of Aviation Safety.

Congress enacted the FAA with the intent "to rest sole responsibility for supervising the aviation industry with the federal government." *Abdullah v. Am.*

8

*Airlines Inc.*, 181 F.3d 363, 368 (3d Cir. 1999). The Senate Report in support of the FAA confirms this intent:

> [A]viation is unique among transportation industries in its relation to the federal government—*it is the only one whose operations are conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by States or local authorities*. Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

*Id.* at 368 (quoting S. Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958)) (emphasis added); *see also A.T.A. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008) (explaining Congress intended the FAA to "centraliz[e] in a single authority . . . the power to frame rules for safe and efficient use of the nation's airspace") (citations omitted). Federal regulations and guidelines enacted pursuant to the FAA provide *national* standards in the aviation industry on a wide range of matters, including safety and flight operations, crew training, aircraft certification, and pilot qualifications. *See, e.g.*, *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 639 (1973) (recognizing that "a uniform and exclusive system of federal regulation" is required "if the congressional objectives underlying the [FAA] are to be fulfilled").

In the seminal case of *Abdullah v. American Airlines*, the Third Circuit Court of Appeals recognized the FAA's central role in regulating aviation safety, holding that federal law preempts the entire field of aviation safety and provides the standard of care for such claims. 181 F.3d at 371. The Third Circuit grounded its decision in the pervasive body of federal regulation governing air safety,

9

including 14 C.F.R. § 91.13(a),[3] which "supplies a comprehensive standard of care to be exercised by pilots and flight crew," as well as the numerous specific regulations governing nearly all aspects of flight operations. *Id.* In order to ensure a "consistent means of regulating aviation safety," the Third Circuit found that "the standard applied in determining if there has been careless or reckless operation of an aircraft should be federal; state or territorial regulation is preempted." *Id.* at 372; *see also Montalvo v. Spirit Airlines*, 508 F.3d 464, 475-76 (9th Cir. 2007); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir. 2005); *French v. Pan Am Express, Inc.*, 869 F.2d 1, 6-7 (1st Cir. 1989); *Curtin v. Port Auth. of N.Y.*, 183 F. Supp. 2d 664, 671-72 (S.D.N.Y. 2002) ("Congress passed the ADA twenty years after the FAA. Thus, this Court finds that the [ADA] . . . is distinct and separate from the larger overarching safety issue that originally motivated passage of the FAA.")

District courts in Florida have found that the FAA "clearly creates field preemption specifically for safety-related claims." *Carvajal v. Am. Airlines, Inc.*, No. 10-CV-23269-WMH, 2011 WL 13273367, at *4 (S.D. Fla. Nov. 10, 2011) (dismissing plaintiff's claims as subject to implied preemption under the FAA where the claims related to being told to remain seated and maintaining aircraft such that mechanical and safety hazards did not create flight delays); *see also*

---

[3] "No person may operate an aircraft in a careless of reckless manner so as to endanger the life or property of another."

*Schopp v. American Airlines*, No. 16-cv-23630, 2017 WL 3130360, at *3 (S.D. Fla. July 24, 2017) (quoting *Abdullah* and finding that "the FAA and FARs 'establish complete and thorough safety standards for interstate and international air transportation'").

    **B.    Because The Complaint Fails To Assert A Violation Of Any Federal Standards Of Care Or Federal Aviation Regulations, It Must Be Dismissed.**

The allegations within the Complaint, that Frontier failed to protect Plaintiff from harm and negligently permitted the boarding of Passenger B, implicate the general federal standard of care articulated in 14 C.F.R. § 91.13(a)—"No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." Additionally, Plaintiff's allegations involve specific regulations concerning flight crew training, flight crew supervision, and general flight operations. *See, e.g.*, 14 C.F.R. § 121, subpart M (airman and crewmember requirements), subpart N (training program), subpart O (crewmember qualifications), subpart Q (flight time limitations and rest requirements: domestic operations), subpart T (flight operations), Appendix E (flight training requirements), Appendix F (proficiency check requirements); 14 C.F.R. Part 67, subpart A (medical standards), subpart B (medical certificate for first-class airman). It is clear that Plaintiff's allegations implicate air safety and are the subject of pervasive federal regulation.

The Complaint at issue here vaguely asserts a claim for common carrier negligence under state law and contends that the injuries sustained by Plaintiff

11

were a result of Frontier's "negligence, carelessness, gross negligence, and statutory violation of 49 U.S.C. § 41702." (Dkt. 2 ¶ 12.) The Complaint, however, fails to plead a violation of the federal standard of care and thus does not state a claim under *Abdullah*, *Montalvo*, and their progeny, as well as the exacting pleading standard imposed by *Iqbal*. *See Iqbal*, 556 U.S. at 678 (requiring both a clear indication of the misconduct alleged, and facts that on their face plausibly allow a conclusion that such misconduct occurred); *Hill v. Skywest Airlines, Inc.*, No. 06-cv-00801, 2008 WL 4816451, at *11 (E.D. Cal. Nov. 5, 2008) (granting motion to dismiss because the complaint did not state a claim under federal law for injuries that occurred during disembarking). Because Plaintiff has failed to articulate the governing federal standard of care, she cannot meet the requisite pleading standard, and her Complaint must be dismissed.

### III. Plaintiff Fails To State A Claim For Relief.

Even if not preempted, the Complaint must be dismissed because Plaintiff fails to state a cause of action for negligence or gross negligence and fails to provide a basis for punitive damage or attorneys' fees. Additionally, 49 U.S.C. § 41702 does not entitle Plaintiff to a private right of action.

#### A. Frontier Did Not Owe Any Duty to Plaintiff Regarding Acts Of Third Parties And Therefore Her Negligence Claim Fails.

Plaintiff has failed to meet the pleading standards for a negligence claim. To sustain a claim for negligence under Florida law, the plaintiff must establish: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that

12

duty; (3) the defendant's breach was the actual and proximate cause of injury to the plaintiff; and (4) actual damages resulted from that injury. *Greene v. Sw. Airlines Co.*, No. 8l0CV1552T35EAJ, 2012 WL 13105853, at *3 (M.D. Fla. Jan. 19, 2012) (citing *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008)). The duty element is a matter of law and therefore a question for the Court. *Dorsey v. Reider*, 139 So. 3d 860, 863 (Fla. 2014) (establishing the duty element of negligence as a minimal threshold legal requirement for opening the courthouse doors) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)).

The general rule is that a party has no legal duty to prevent the misconduct of third persons. *Michael & Philip, Inc. v. Sierra,* 776 So.2d 294, 297 (Fla. 4th DCA 2000). "Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party." *Boynton v. Burglass*, 590 So. 2d 446, 448 (Fla. 3d DCA 1991), *as amended on denial of reh'g* (Dec. 24, 1991). Even if the common carrier standard subjected Frontier to a heightened duty, the obligation to protect from the actions of third persons only arises for foreseeable third-party misconduct. *See Dorsey*, 139 So. 3d at 863 ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others.") (quoting *McCain*, 593 So. 2d at 502); *DeLucia v. Metro. Dade Cty.*, 451 So. 2d 1008, 1010 (Fla. 3d DCA 1984) (explaining carrier's liability depended on whether the "bus driver had reasonable ground to believe that an act of violence by the fellow passenger in one form or another would follow, and that the bus driver did

13

not act to prevent such violence").[4] A defendant is not liable where he neither knows nor should know of the unreasonable risk and is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate. Restatement (Second) of Torts § 314A, cmt. e (1965); *see also Reichenbach v. Days Inn of Am., Inc.*, 401 So. 2d 1366, 1367 (Fla. 5th DCA 1981) (finding no liability for innkeeper where "there was no evidence that the innkeeper could have deterred or prevented" the injury "by reasonable precautions that were not taken" and "no evidence that this incident was foreseeable").

Here, Plaintiff states no fact upon which the Court could plausibly infer that Frontier was aware of Passenger B's propensity for violence or that an attack upon Plaintiff was foreseeable insofar as is necessary for a duty to arise. Passenger B was admittedly asleep the entire flight and relies solely upon allegations that "other passengers" noted that Passenger B looked strange, unstable, and acted bizarre. (Dkt. 2 ¶¶ 6, 7.) Plaintiff does not identify said passengers or explain the actions

---

[4] *See also Truog v. Mid-Am. Apartment Cmtys., Inc.*, 358 F. Supp. 3d 1332, 1340 (M.D. Fla. 2019) (applying Florida law and holding that a duty to protect tenants against foreseeable acts of an individual existed as a matter of law but only arose upon knowledge of his violent propensities); *Alvarez v. Metro. Dade Cty.*, 378 So. 2d 1317, 1318 (Fla. 3d DCA 1980) (affirming judgment on the pleadings and holding that the County would only be liable for the assault of one patron on another patron if it had previous notice that the particular assailant had dangerous propensities); *Hardy v. Pier 99 Motor Inn*, 664 So. 2d 1095, 1097 (Fla. 1st DCA 1995) ("Nor is the hotel liable for the conduct of a third party on the premises which causes injury, unless the injurious conduct is reasonably foreseeable."); *Reichenbach v. Days Inn of Am., Inc.*, 401 So. 2d 1366, 1369 (Fla. 5th DCA 1981) (Cowart, J., concurring) ("Since the innkeeper is not an insurer of the guest's safety and is not liable, strictly or otherwise, for the acts of third persons, he is under no duty to exercise any care to warn or to take preventive action until he knows, or has reason to believe, that a third person is acting, or is about to act, in a manner as will, or is likely to, cause harm to a guest.")

that allegedly led to these opinions. Nor does Plaintiff allege to have witnessed any encounters among Passenger B and the flight crew which could have provided Frontier's necessary basis of knowledge. This Court's analysis is limited to the four corners of the Complaint (*Swerdlin v. Fla. Mun. Ins. Tr.*, 162 So. 3d 96, 97 (Fla. 4th DCA 2014)) where there are plainly insufficient facts to infer that it was foreseeable that Passenger B would become violent and therefore no duty on the part of Frontier. *See Drake v. Sun Bank & Tr. Co. of St. Petersburg*, 377 So. 2d 1013, 1016 (Fla. 2d DCA 1979) (affirming dismissal of complaint for failure to state a cause of action where sufficient facts had not been alleged to meet the test of foreseeability which would impose a duty upon the bank to furnish protection to appellant's decedent).[5]

Additionally, once a common carrier knows that a passenger has been injured, they have a duty to care for them until they can be cared for by others. *See Sells v. CSX Transp., Inc.*, 170 So. 3d 27, 37 (Fla. 1st DCA 2015). Here, Frontier's crew did exactly that. They removed the offending passenger from the situation and escorted him to the back of the plane to await his arrest upon landing. (Dkt. 2 ¶¶ 9, 10.) They further ensured that Plaintiff was taken by EMS to a local hospital upon landing. (*Id.* ¶ 11.)

---

[5] *See also Ramsay v. Frontier, Inc.*, No. 19-CV-03544-CMA-NRN, 2020 WL 4557545, at *9-10 (D. Colo. July 30, 2020), *report and recommendation adopted*, No. 19-CV-03544-CMA-NRN, 2021 WL 651021 (D. Colo. Feb. 19, 2021) (dismissing negligence claims against airline where there was an "absence of any warnings or indications about the behavior of these particular assailants in advance of these alleged assaults" and therefore "no general duty on Frontier's part to act in advance to prevent the assaults from occurring").

### B. Plaintiff Fails To Plead A Claim For Gross Negligence Or A Basis For Punitive Damages.

A finding of gross negligence under Florida law requires the following: (1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger spoken of; and (3) the act or omission complained of must occur in a manner which evinces a conscious disregard of consequences as distinguished from a careless disregard thereof. *See Bos. ex rel. Est. of Jackson v. Publix Super Markets, Inc.*, 112 So. 3d 654, 659 (Fla. 4th DCA 2013) (citing *Hoyt v. Corbett,* 559 So.2d 98, 100 (Fla. 4th DCA 1990)). Here, Plaintiff fails to even distinguish her gross negligence claim from her ordinary negligence claim and the Complaint is devoid of any facts that establish the existence of an imminent or clear and present danger, a showing of knowledge on the part of Frontier, or a conscious disregard of consequences. *See In re New River Shipyard, Inc.*, 355 B.R. 894, 905 (Bankr. S.D. Fla. 2006) (finding that a pleading asserting gross negligence "must contain sufficient allegations of ultimate fact as to make it fairly appear that the defendant's course of conduct was of a gross, willful, and wanton character"); *Rice v. Clement*, 184 So. 2d 678, 680 (Fla. 4th DCA 1966) ("Adjectives employed to label an act are of themselves insufficient to support a claim of gross negligence.").

Further, in order to recover exemplary damages, a complaint must allege general facts and circumstances of fraud, malice, gross negligence, or oppression.

16

*Rice*, 184 So. 2d at 680 (citing *Winn & Lovett Grocery Co. v. Archer*, 171 So. 214, 221 (Fla. 1936) ("Exemplary damages are given solely as a punishment where torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others."); *see also Lewis v. Snap-on Tools Corp.*, 708 F. Supp. 1260, 1262 (M.D. Fla. 1989) (dismissing plaintiffs' claim for punitive damages where the evidence offered did "not constitute a 'reasonable showing' providing a 'reasonable basis' for recovery of punitive damages as required by Section 768.72, Fla. Stat.")  The Complaint here clearly does not meet this standard, and accordingly, Plaintiff's claim of gross negligence on the part of Frontier must be dismissed and any claim for punitive damages also must be dismissed.

  **C. Plaintiff's Statutory Violation Claim Fails Because There Is No Private Right of Action Under 49 U.S.C. § 41702 or § 41712.**

While the FAA requires airlines to provide "safe and adequate" service to their passengers pursuant to Section 41702, the FAA is "silent when it comes to a passenger's private right of action for damages suffered as a result of a violation of this standard." *Romano v. Am. Trans Air*, 48 Cal. App. 4th 1637, 1643, 56 Cal. Rptr. 2d 428, 432 (1996). Multiple courts have held that there is no private right of action under Section 41702. *See Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 522 (5th Cir. 2002) (noting that Section 41702 does not confer a substantive right on interstate air passengers such as Casas); *Lucia v. Teledyne Cont'l Motors*, 173 F.

17

Supp. 2d 1253, 1265 (S.D. Ala. 2001) (explaining the Aviation Act does not provide an express cause of action to private parties under Sections 41712 or 41702). Accordingly, any claims as to a statutory violation of 49 U.S.C. § 41702 must be dismissed.

Additionally, there is no private right of action under Section 41712, which encompasses the prohibition on unfair or deceptive practices. *See Bailey*, 889 F.3d at 1269 n. 21 ("The prohibition on unfair or deceptive practices in 49 U.S.C. § 41712 has been held not to create a private right of action.") (citing *Casas*, 304 F.3d at 519–20; *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332, 340 (3d Cir. 1975)). Indeed, it is a "means of vindicating the public interest" and does not provide "a remedy for private wrongs." *Bailey*, 889 F.3d at 1269 n. 21 (quoting *Pan Am. World Airways, Inc. v. United States*, 371 U.S. 296, 306 (1963)). Accordingly, any claim as to a statutory violation of 49 U.S.C. § 41712 must be dismissed and Plaintiff's claim for attorneys' fees, inexplicably grounded in this Section, does not stand and must also be dismissed.

## CONCLUSION

For the foregoing reasons, Frontier respectfully requests that this Court: (i) grant the Motion to Dismiss with prejudice; and (ii) grant such other relief as necessary and equitable.

**Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that his firm conferred with Plaintiff's counsel in a good-faith effort to resolve the issues raised in the Motion. The parties were unable to resolve the issues raised in this Motion.

Dated: September 8, 2021

> HOLLAND & KNIGHT LLP
>
> */s/ Daniel Buchholz*
> Brandon Faulkner
> Florida Bar No. 58560
> brandon.faulkner@hklaw.com
> Daniel L. Buchholz
> Florida Bar No. 1010188
> daniel.buchholz@hklaw.com
> HOLLAND & KNIGHT LLP
> 100 North Tampa Street, Suite 4100
> Tampa, FL  33602
>
> *Attorneys for Defendant*
> *Frontier Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 8, 2021, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

Kennan G. Dandar, Esq.
Florida Bar No. 289698
Dandar & Dandar, P.A.
P.O. Box 24597
Email: KGD@DandarLaw.net
*Counsel for Plaintiff*

                                            */s/ Daniel Buchholz*
                                            Attorney